HUDSON COUNTY CIRCUIT COURT.

APPLICATION FOR THE AWARDING OF THE PROCESS OF
SUBPOENA PURSUANT TO N. J. S. A. 54:4-34.

For the City of Jersey City, *Charles A. Rooney.*

For the Delaware, Lackawanna and Western Railroad
Company, *John A. Laird.*

BROWN, C. C. J. In the month of April, 1943, the tax
assessor of the City of Jersey City issued an order in writing,
directing the Delaware, Lackawanna and Western Railroad
Company, a corporation authorized to transact business in
the State of New Jersey, and Walter W. Eastburn, land and
tax agent of said company, to appear before the assessor
at the city hall in Jersey City and testify in regard to, and
produce, such lease or leases or operating agreements which
the railroad company now has, or did have on October 1st,
1941, and October 1st, 1942, with any person or corporation
with regard to the "Lackawanna Freight Terminal Build-
ing" located in Jersey City. The order was admittedly duly
served. It is agreed there are no leases on record relating
to said building. The building is now assessed by the State
Tax Commissioner as second class railroad property and
has been so assessed and classified for a number of years.
The tax assessor of Jersey City demands the production of
the leases and the sworn testimony of the agents of the rail-
road company to discover whether the provisions of the terms
of the leases or agreements are such as to justify reclassifica-
tion of said property so as to include it in the ratables of
Jersey City instead of being classified as second class railroad
property. The railroad company and its agents have refused
to obey the order of the tax assessor of Jersey City. The

application before the court is for the award of process of subpœna to compel the parties to appear and testify and produce the papers required before the tax assessor. The applicant for the order contends that the statutory authority for this court to make such an order may be found in *R. S.* 54:4-34. The railroad company and its agent do not dispute the service of the order made upon them by the assessor of Jersey City. The matter in difference between the parties is whether this court has the power to award process for subpœna for appearance to testify and production of records and punish for contempt any person disregarding such process. The city contends that this court has the power and the railroad company and its agents deny there is such power in the law. The statutory provisions involved are *R. S.* 54:4-16; *N. J. S. A.* 54:4-16, which relates to personal property and provides:

"The assessor shall have power to examine under oath any person or officer of a corporation with regard to the taxable property of himself, the corporation or others, or the truth of the matters contained in the claim for deduction or exemption of any person or corporation, and may compel the attendance of such persons and other witnesses and the production of books and papers by his order therefor, designating the time and place for such attendance and production. The order shall be served on the person, witness or corporation at least two days before the time named, either personally or by leaving it at the residence of the person or witness or at the office of the corporation. In case of failure to comply with the order, the assessor may apply to the circuit court or the court of common pleas which shall award process of subpœna for such appearance and production, and may punish for contempt any person disregarding such process."

And *R. S.* 54:4-34; *N. J. S. A.* 54:4-34, which relates to real property and which provides:

"Every owner of real property of the taxing district shall, on application of the assessor, render a full and true account of his name and real property and produce his title papers, and he may be examined on oath by the assessor, in substantially the same form as is provided in article 4 of this chapter

(54:4-9 *et seq.*) in the case of personal property, and if the shall refuse so to do, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall estimate his property at the highest value he has reason to suppose it may be placed."

It is a further contention of the applicant that the two sections of the statute above cited should be read together and that as a consequence the powers and duties of the assessor under section 54:4-16, relating to personal property, are conferred on the assessor by the express language of section 54:4-34 relating to real property. As the question presented for determination arises primarily out of the construction to be placed upon the sections of the Tax Act above cited it is well to review briefly the tax laws of the state concerning the power of the assessor to examine persons in relation to their real and personal property for the purposes of taxation. In the revision, *Pamph. L.* 1903, *p.* 399, § 8, it was provided that on application of an assessor every inhabitant of the taxing district shall render a full and true account of his name, ratable real property and produce his title papers and may be examined on oath by the assessor and if he shall refuse to do so, or testify on oath when required, or shall render a false and fraudulent account, the assessor shall estimate his property at the highest value he has reason to suppose it may be placed. It was also provided in *Pamph. L.* 1903, § 14 (at *p.* 402), in regard to the assessment of personal property that the assessor had the power to examine and to compel the attendance of such persons as witnesses; require the production of books and papers by his order and in case of failure to comply with such order the assessor was empowered to apply to the Circuit or County Court which shall award process of subpœna for such appearance and production. The general revision of *Pamph. L.* 1903 provides for an examination and production of papers and is substantially the same form as the present Tax Act, with the exception that *R. S.* 54:4-34; *N. J. S. A.* 54:4-34, relating to real estate provides that the owner may be examined on oath by the assessor "in substantially the same form as is provided in article 4 of the chapter (54:4-9, *et seq.*).

Following the enactment of *Pamph. L.* 1903 there was enacted the tax law of 1918 which is the source of the law which controls the issues involved on this application. *R. S.* 54:4-16; *N. J. S. A.* 54:4-16, relating to personal property was enacted the same as section 304, *Pamph. L.* 1918, *p.* 855, and section 403 relating to real property, *Pamph. L.* 1918, *p.* 862, is the same as *R. S.* 54:4-34; *N. J. S. A.* 54:4-34. It is an established rule of construction regarding tax laws that a liberal construction must be given to all tax laws for public purposes not only that the officers of government may not be hindered, but also that the rights of all taxpayers may be equally preserved; *State* v. *Taylor, Collector of Paterson,* 35 *N. J. L.* 184. It should be borne in mind also a "Tax" is a legal imposition, exclusively of statutory origin; *Benle* v. *Bugbee,* 103 *Id.* 608; 137 *Atl. Rep.* 554, and so are the remedies attendant thereto. The legislature without ambiguity and with clearly expressed intention by *R. S.* 54:4-16; *N. J. S. A.* 54:4-16, empowered the assessor to examine any person or officer of the corporation relating to the taxable personal property of himself or the corporation and to compel the attendance of such person and their witnesses and the production of books and papers and it is clearly expressed in this section of the tax law that "in case of failure to comply with the order, the assessor may apply to the Circuit Court or the Court of Common Pleas which shall award process of subpœna for such appearance and production, and may punish for contempt any person disregarding such process." The enactment of *R. S.* 54:4-34 requires every owner of real property on application of the assessor to render a true account of his name and real property and produce his title papers and that he be examined under oath by the assessor in substantially the same form as provided in *R. S.* 54:4-16 in the case of personal property, and the legislature expressed its intention without ambiguity concerning a witness who refused to testify or produce books and papers that the assessor "shall estimate his property at the highest value he has reason to suppose it may be placed." It will be thus seen that the reference in *R. S.* 54:4-34 to *R. S.* 54:4-16 relates to the *form* of the examination con-

cerning real property to be the same as the examination by the assessor concerning personal property. In case of failure, however, the penalties in both sections are expressly different. Under R. S. 54:4-16; N. J. S. A. 54:4-16, upon failure an application may be made to the Circuit Court of County Court for process to issue. Under R. S. 54:4-34; N. J. S. A. 54:4-16, the remedy is to assess the property at the highest value the assessor has reason to suppose it may be placed. It is this latter statutory remedy that is open to the applicant. The petition will be denied.